IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYANT JONES, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:19-1070 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| JAMIE LUTHER, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM ORDER

Petitioner raised six claims for federal habeas relief in the Petition for a Writ of Habeas Corpus that he filed with this Court. (ECF 1.) He labeled those six claims—each of which was a claim of trial counsel's ineffective assistance—Claims A, B, C, D, E and F. On June 23, 2021, the Court issued final judgment in this case, denying the Petition and denying a certificate of appealability. (ECF 25.)

As the Court explained in the Memorandum (ECF 24) issued on that same date, the Court denied Claims A, B, C, D, E and F because they were timebarred under the applicable one-year statute of limitations enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d). (ECF 24 at 26-33.) The Court rejected Petitioner's argument that: (1) a June 5, 2013 affidavit of Terrence Edwards ("Terry's 2013 Affidavit") and (2) a supplemental police report prepared by Det. Ladley the day after the murder, on January 14, 2018 ("Det. Ladley's 2008 Police Report"), amounted to new evidence of his factual innocence that provided a "gateway" through which the Court may consider his untimely habeas claims under *McQuiggin v. Perkins*, 569 U.S. 383 (2013).[1] (ECF 24 at 27-31.) The Court held that Terry's 2013

---

[1] Petitioner referred to this argument as his "gateway actual innocence claim," and the Court did the same.

1

Affidavit was not reliable evidence of Petitioner's factual innocence. (*Id.* at 29-31.) The Court also held that, to the extent that Petitioner asserted that Det. Ladley's 2008 Police Report bolstered the reliability of Terry's June 2013 Affidavit, that assertion was unconvincing. It also determined that "the police report itself is not evidence of Petitioner's factual innocence[.]" (*Id.* at 31.)

Importantly, the Court also held in the alternative that, even if it excused Petitioner's failure to comply with AEDPA's limitations period under *McQuiggin*, Claims A, B, C, D, E and F were denied on the merits. (*Id.* at 32-33, 36-37.) Specifically, the Court held: (1) the state court's adjudication of Claims A, B and C withstood AEDPA's standard of review, as codified at 28 U.S.C. § 2254(d); and (2) Claims D, E and F, which Petitioner failed to exhaust in state court, were denied under *de novo* review. (*Id.*)

The Court further held that Petitioner was not entitled to habeas relief on a freestanding claim of actual innocence premised upon Terry's 2013 Affidavit and Det. Ladley's 2008 Police Report because neither the Supreme Court nor the Court of Appeals for Third Circuit has held that such a claim is cognizable in a federal habeas case. (*Id.* at 33-34.) Finally, the Court explained why Petitioner's request for an evidentiary hearing was denied. (*Id.* at 34-37.)

Now pending before the Court is Petitioner's timely motion for reconsideration, which he has filed pursuant to Federal Rule of Civil Procedure 59(e).[2] (ECF 26.) In this motion, Petitioner also seeks leave to amend his petition to raise arguments and/or claims "pertaining to [PCRA] counsel's ineffectiveness[.]" (*Id.* at 19; *id.* at 15-16.)

---

[2] A Rule 59(e) motion "must be filed no later than 28 days after the entry of the judgment." Fed.R.Civ.P. 59(e). Petitioner's motion was docketed by the Clerk of Court on July 20, 2021, which was the twenty-seventh day of the filing period. And, because he was proceeding *pro se* at the time, under the prisoner-mailbox rule Petitioner's motion is actually deemed filed on July 15, 2021, which is the day he avers he provided it to prison officials for mailing.

2

I.    **Discussion**

The standard for obtaining relief under Rule 59(e) is difficult for a party to meet. It is not to be used to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant. The Court of Appeals has explained:

> The scope of a motion for reconsideration, we have held, is extremely limited. Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence. *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). "Accordingly, a judgment may be altered or amended [only] if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued the challenged decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (quotation marks omitted)[.]

*Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (first bracketed text added by the court of appeals).

Petitioner does not assert any intervening change in the controlling law or the availability of previously unavailable evidence. He relies upon the third factor listed above, but none of the arguments he makes in his motion establish the requisite "clear error of law or fact" or the need to prevent a "manifest injustice" that would justify reconsideration of the decision the Court issued in this case. Moreover, Petitioner's arguments only address the Court's conclusion that he could not avoid the dismissal of his claims under AEDPA's statute of limitations pursuant to *McQuiggin*. He does not address the Court's alternative holding denying Claims A, B, C, D, E and F on the merits. (ECF 24 at 32-33.)

Most of the arguments Petitioner makes in his motion are simply reassertions of the arguments he made to the Court in the fifty-four-page memorandum of law he filed contemporaneously with his Petition. (*See* ECF 1-1.) A movant who fails in the first attempt to persuade a court to adopt its position may not use a subsequent Rule 59(e) motion in order to

rehash arguments already made and rejected, however, or to raise new arguments that he previously failed to raise when the matter at issue was being decided. *Blystone*, 664 F.3d at 415-16; *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995); *Williams v. City of Pittsburgh*, 32 F.Supp.2d 236, 238 (W.D. Pa. 1998).

Only two of Petitioner's arguments require additional discussion beyond that which is already contained in the Court's Memorandum (ECF 24.) They are his arguments that: (1) the Court erred in determining that Terry's 2013 affidavit was not reliable; and (2) the Court erred because it allegedly failed to view Det. Ladley's 2008 Police Report as the premise for a separate, independent claim of Petitioner's actual innocence.

In its Memorandum (ECF 24), the Court listed numerous reasons for its conclusion that Terry's 2013 Affidavit was not reliable. It explained that Petitioner was in possession of that affidavit at the time he filed his *pro se* PCRA petition in June 2013; that he abandoned his PCRA claim premised upon Terry's alleged recantation during his PCRA proceeding; that he did not notify the PCRA court that he wanted to litigate a claim premised upon the affidavit even though he advised the PCRA court that he wanted to litigate another claim not raised by PCRA counsel in the amended PCRA petition; and he did not present testimony from Terry at his May 7, 2015 PCRA hearing or mention Terry's alleged recantation himself when he testified at that hearing. (ECF 24 at 29-30.)

The Court also observed that the "averments Terry made in his affidavit—that a masked intruder entered the house through a back door, shot the victim, then followed Terry outside and chased him—are not reliable for the additional reason that those averments are not corroborated by the surveillance evidence." (ECF 24 at 30.) Petitioner argues that this observation is factually incorrect because the *surveillance video* does not show what was occurring at the back door of the

4

victim's house. That does not make the Court's observation incorrect, however. The fact remains that the surveillance video does not support the statements Terry made in his affidavit. Petitioner has directed the Court to no evidence that that video contains any indicia that another individual was chasing Terry near the house around the time of the murder. Moreover, the video establishes that Petitioner was at the victim's house during the relevant time period. The Court further notes that, as it explained in the Memorandum, Terry identified Petitioner as the shooter in two of the telephone calls he conducted the afternoon of January 13, 2008 (to Durob Johnson and to Ondaryl Smith), before he knew that his calls were being recorded by investigators. (ECF 24 at 8-9, 31.)

Petitioner also attaches to his motion a *surveillance log* (ECF 26-1), which lists the "coming and going of every person at the victim's residence on the day of the shooting." (ECF 26 at 7.) The Court cannot consider the surveillance log, however, because Petitioner acknowledges that, although it was available to him, he did not present it to the Court before it issued its final judgment.[3] In deciding a Rule 59 motion for reconsideration, "courts will not address new arguments *or evidence that the moving party could have raised before the decision issued.*" *Banister v. Davis*, —U.S. —, 140 S. Ct. 1698, 1703 (2020) (emphasis added) (citations omitted). In any event, even if the Court could consider the surveillance log, it does not demonstrate that the Court clearly erred in its determination that the surveillance evidence does not corroborate the statements Terry made in the 2013 affidavit.

Equally unconvincing is Petitioner's contention that the Court erred in allegedly failing to view Det. Ladley's 2008 Police Report—which tended to show that Petitioner may have left the victim's home at 11:34 a.m.—as the premise for a separate, "independent claim of Petitioner's actual innocence" and not merely as evidence submitted to "bolster" the reliability of Terry's 2013

---

[3] Petitioner does not assert that the surveillance log was part of the state court record.

affidavit. (ECF 26 at 2-3; 9-13.) Petitioner's description of the Court's decision is incorrect. As the Court explained in its Memorandum, a *freestanding actual innocence claim* has never been held to be a cognizable claim in a non-capital habeas case such as this. (ECF 24 at 33-34.) Moreover, the Court also expressly held that Det. Ladley's 2008 Report is not the type of evidence that demonstrates a *gateway claim* of factual innocence sufficient to avoid AEDPA's limitations period under *McQuiggin*. Specifically, the Court held that "the police report itself is not evidence of Petitioner's factual innocence since the exact time the shooting occurred was not established. Thus, Petitioner could have shot the victim even if he left the home at 11:34 a.m." (ECF 24 at 31.)

Finally, Petitioner also seeks leave to amend his habeas petition so that he can raise "arguments" or "claims" "pertaining to [PCRA] counsel's ineffectiveness." (ECF 26 at 19; *id.* at 15 (asserting the COVID-19 restriction stifled his ability to amend his petition earlier "to include claims of PCRA counsel's ineffectiveness.")). This request also is denied.

Where, as is the case here, "a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and 59 inquires turn on the same factors." *Jang v. Boston Sci. Scimed, Inc.*, 729 F.3d 357, 367-68 (3d Cir. 2013) (citations omitted); *see also Ahmed v. Dragovich*, 297 F.3d 201, 207-08 (3d Cir. 2002) ("Although Rule 15 vests the District Court with considerable discretion to permit amendment 'freely…when justice so requires,' Fed.R.Civ.P. 15(a), the liberality of the rule is no longer applicable once judgment has been entered."); *see also* 3 Moore's Federal Practice–Civil § 15.13[2], Lexis (database updated Sept. 2021) ("a plaintiff may be granted leave to amend by the district court only if that court agrees to alter or reopen the judgment under Rule 59, that court agrees to set it aside under Rule 60, or there is a timely appeal and the judgment is set aside on appeal.")

In its Memorandum, the Court observed that Petitioner made only a "boilerplate assertion that PCRA counsel was ineffective" without presenting any factual or legal support. (ECF 24 at 30 n.20.) In his motion, Petitioner once again asserts that his PCRA counsel was ineffective but he fails to set forth any facts that he would include in an amended habeas petition to support that assertion. Thus, it would be futile to permit amendment. *See*, *e.g.*, *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017) (leave to amend a complaint may denied if amendment would be futile). Amendment would also be futile because, to the extent that Petitioner seeks to raise a stand-alone claim that PCRA counsel was ineffective, such a claim is not cognizable, a fact codified by statute at 28 U.S.C. § 2254(i), which expressly provides that "[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254." *See also Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings...Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.").

**II.    ORDER**

Based upon the foregoing, Petitioner's "Motion for Reconsideration Pursuant to Federal Rule of Civil Procedure 59(e)/Leave to Amend Petition" (ECF 26) is DENIED. To the extent a certificate of appealability is required, it is denied because reasonable jurists would not find the Court's disposition of Petitioner's motion debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

SO ORDERED this 14th day of December, 2021.

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge